UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


BOBBY JOHNSON                                    CIVIL ACTION

VERSUS                                           NO. 12-2439

TERRY TERRELL, WARDEN                            SECTION "A"(5)
ALLEN CORRECTIONAL CENTER

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. §2254(e)(2).  IT IS HEREBY RECOMMENDED that the instant petition be **DISMISSED WITH PREJUDICE.**

### PROCEDURAL HISTORY[1]

Petitioner, Bobby Johnson, is a state prisoner currently incarcerated in the Allen Correctional Center, Kinder, Louisiana. On October 28, 2004, the Jefferson Parish District Attorney filed a bill of information charging Johnson with distribution of marijuana in violation of LSA-R.S. 40:966(A).  At the arraignment,

---

[1]Portions of the procedural history are taken from the Louisiana Fifth Circuit Court of Appeal's opinion, State v. Johnson, 32 So.3d 250 (La. App. 5 Cir. 1/26/10).  St. Rec. Vol. 6 of 7.

Johnson pleaded not guilty.  Thereafter, on April 13, 2005, the trial court heard and denied Johnson's motions to suppress evidence and identification.

On September 12 and 13, 2007, Johnson proceeded to trial before a twelve-person jury in the Twenty-Fourth Judicial District Court for the Parish of Jefferson.  After considering the evidence presented, the jury found Johnson guilty as charged.  On December 4, 2008, the trial court denied Johnson's motions for post-judgment verdict of acquittal and for new trial and then sentenced Johnson to fifteen years imprisonment at hard labor.  The State filed a multiple offender bill of information alleging that Johnson was a second felony offender based on a 1999 conviction of aggravated battery.  On February 12, 2009, pursuant to a plea agreement, Johnson admitted the allegations of the multiple bill and the trial judge vacated his original sentence and resentenced Johnson as a second felony offender to fifteen years imprisonment at hard labor without benefit of probation or suspension of sentence.  Johnson's oral motion to reconsider this sentence was denied.

On January 26, 2010, the Louisiana Fifth Circuit Court of Appeal affirmed Johnson's conviction and sentence.  State v. Johnson, 32 So.3d 250 (La. App. 5th Cir. 1/26/10); St. Rec. Vol. 6 of 7.  On September 17, 2010, the Louisiana Supreme Court denied Johnson's writ application without opinion.  State v. Johnson, 45 So.3d 1042 (La. 2010); St. Rec. Vol. 7 of 7.

On September 16, 2011, Johnson, through counsel, filed a post-conviction application with the state district court.[2]  On January 12, 2012, the state district court denied Johnson's post-conviction application.[3]  On April 13, 2012, the Louisiana Fifth Circuit likewise denied Johnson post-conviction relief.[4]  On September 21, 2012, the Louisiana Supreme Court denied Johnson's writ application without opinion.[5]

On August 28, 2012, while his counseled post-conviction application was pending before the Louisiana Supreme Court, Johnson filed with the state district court a pro se motion to clarify/run sentence concurrently.[6]  On October 11, 2012, the state district court denied Johnson's motion.[7]  On October 15, 2012, Johnson filed an amended and corrected motion to clarify/run sentence concurrently.[8]  On December 10, 2012, the state district court

-------------------

[2]St. Rec. Vol. 7 of 7

[3]Id.

[4]State v. Johnson, No. 2012-KH-0147 (La. App. 5th Cir. 4/13/12); St. Rec. Vol. 7 of 7.

[5]State v. Johnson, 98 So.3d 334 (La. 2012); St. Rec. Vol. 7 of 7.

[6]St. Rec. Vol. 7 of 7.

[7]Id.

[8]Id.

denied Johnson's second motion.[9]  Johnson did not seek review of the district court's adverse decisions.

On September 28, 2012, Johnson filed the instant federal habeas corpus action, raising the following claims: 1) the State failed to prove his identity as the drug seller and, therefore, there was insufficient evidence to support his conviction;[10] 2) his sentence of 15 years is illegally excessive;[11] 3) he was denied effective assistance of counsel at sentencing;[12] 4) he should have been found "not guilty" on the charge of distribution of marijuana because there was insufficient evidence to support a guilty verdict.[13]  The State concedes that the instant action is timely and that Johnson has exhausted his state court remedies.[14]

---

[9]Id.

[10]In its response, the State breaks down Claim 1) into two claims:  "1. The evidence was insufficient to support his conviction; 2.  The district court erred in denying his Motion for New trial based upon sufficiency of the evidence."  Rec. Doc. No. 11, p. 5.  The Court finds no such break down in Johnson's supporting memorandum.  However, there is essentially no difference in the alleged "two" claims as the State recognizes by addressing the claims as one.  See Rec. Doc. No. 11, pp. 11-20.

[11]In his supporting memorandum, Johnson refers to his excessive sentence claim as "Claim Three/Claim Four."  Rec. Doc. No. 3, p.27.

[12]In his supporting memorandum, Johnson labels his ineffectiveness claim as "Claim Five."  Rec. Doc. No. 3, p. 32.

[13]Johnson labels his "not guilty" claim as "Claim Six."  Rec. Doc. No. 3, p. 36.

[14]Rec. Doc. No. 11, p. 4.

4

**FACTS**[15]

On August 19, 2004, Deputy Gene Dixon of the Jefferson Parish Sheriff's Office was working an undercover detail in the Woodmere subdivision, which was a high crime area.  At trial, Deputy Dixon testified that after he arrived in the Woodmere area, he observed defendant, who was wearing a white muscle shirt and blue jean shorts, riding a bicycle in the 2400 block of Alex Kornman.  He stated that he rolled down the passenger side window and asked defendant if he had any weed.  Defendant came to the car by the passenger side window and asked "How many?"  Deputy Dixon said "Four."[16]  Defendant walked away and talked on his cell phone.  Defendant returned to the car and said he only had "three."  Deputy Dixon stated he would take it and defendant sold him three bags of marijuana.  Deputy Dixon gave defendant a twenty dollar bill, and defendant gave him five dollars in change.  Deputy Dixon left the area, described defendant to the agents, and told them about the transaction.  Although the car is usually equipped with a video camera, the video recording equipment in the agent's car malfunctioned at the time of the transaction.[17]

---

[15]The facts were obtained from the Louisiana Fifth Circuit Court of Appeal's opinion, Johnson, 32 So.3d at 251-52.

[16]Deputy Dixon explained that "Four" was street terminology for wanting four $5.00 bags of weed or marijuana.

[17]It was stipulated that the tape of another matter two hours prior to the transaction worked.

Sergeant Corey Wilson of the Jefferson Parish Sheriff's Office was also part of the investigation and was located across the street from the transaction. Sergeant Wilson testified that he witnessed the transaction between the undercover agent and defendant and that the undercover agent purchased drugs from defendant, who was on a bicycle. He testified that he contacted Agent Joseph Ragas of the Jefferson Parish Sheriff's Office by radio and directed him to where defendant was located and what he was doing at the time in order for him to make an identification.

In response to Agent Wilson's request, Sergeant Ragas conducted a stop of defendant on Alex Kornman within minutes. Sergeant Ragas explained that when defendant saw the police car, he started riding off on the bicycle and came to another individual, set the bicycle down, and began talking to him. Sergeant Ragas testified that he spoke with defendant and had known him for probably over ten years. A field interview card was completed on defendant and the information matched an identification card defendant had in his possession. A Polaroid photograph was taken of defendant as well. A photograph was also taken of defendant along with the other individual he was with at the time so that attention would not be drawn to the narcotics investigation.

About six days after the transaction, Agent James Aikman, who was with the Sheriff's Office at the time, presented Deputy Dixon with a lineup. Deputy Dixon identified defendant in a photographic

lineup as the person involved in the drug transaction in the 2400 block of Alex Kornman.

The vegetative material in the three plastic baggies was tested by Daniel Waguespack, who testified as an expert in the field of drug analysis identification.  He testified that the material in the baggies was 3.6 grams of marijuana, a Schedule I controlled dangerous substance.

**STANDARD OF REVIEW**

Amended 28 U.S.C. §§2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles v. Johnson, 127 F.3d 409, 419-20 (citing 28 U.S.C. §2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. §2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. §2254(e)(1).

A state court's determination of questions of law and mixed
questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1)
and receive deference, unless the state court's decision "'was
contrary to, or involved an unreasonable application of, clearly
established [Supreme Court precedent.]'"  Penry v. Johnson, 215
F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d
274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd
in part, rev'd in part on  other grounds, 532 U.S. 782 (2001);
Hill, 210 F.3d at 485.  The United States Supreme Court has
clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing
> legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the
> prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry,
532 U.S. at 792-93; Hill, 210 F.3d at 485.  "'A federal habeas
court may not issue the writ simply because that court concludes in
its independent judgment that the state court decision applied [a
Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634,
641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25
(2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699
(2002).  Rather, under the "unreasonable application" standard,

8

"the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

**<u>INSUFFICIENCY OF EVIDENCE</u> (<u>CLAIMS 1 AND 4</u>)**

Johnson claims that the evidence submitted at trial was insufficient to prove he was the person who sold marijuana to Deputy Dixon.  In support of his claim, Johnson points to several alleged deficiencies in Dixon's testimony, along with a deficiency in Sergeant Wilson's testimony.

Johnson raised this claim on direct appeal to the Louisiana Fifth Circuit. Using the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), and related state case law, the state appellate court held that the evidence presented was sufficient. The court rejected Johnson's contention that the jury should not have believed the State's witnesses's testimony regarding the identity of the drug dealer.  The court concluded that the jury was entitled to judge the credibility of the testimony and evidence and there was no basis for the court to impinge upon that discretion.

The Louisiana Supreme Court denied Johnson's subsequent writ application without reasons and is presumed to have relied upon the same grounds as the Louisiana Fifth Circuit's reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

A claim of insufficient evidence presents a mixed question of law and fact. Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this Court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The well established federal standard set forth in Jackson, 443 U.S. at 319, requires the Court to determine whether, after identifying the elements of the offense as defined by state substantive law and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2000); Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991).

Johnson was charged and convicted of distribution of marijuana. As the Louisiana Fifth Circuit observed:

> LSA-R.S. 40:966(A)(1) provides, in pertinent part, that it is unlawful for any person knowingly or intentionally to distribute a controlled dangerous substance classified in Schedule I. As such, to support a conviction of LSA-R.S. 40:966(A), the State must prove that the defendant distributed a controlled dangerous substance classified in Schedule I. Marijuana is a controlled

10

dangerous substance classified in Schedule I. LSA-R.S. 40:964. In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant's identity as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof.

Johnson, 32 So.3d at 253 (citations omitted).

In this case, Johnson does not allege that the State failed to prove that a marijuana sale took place. Instead, Johnson "asserts that he is not the person who engaged in the drug distribution. He argues that the actual seller was Patrick Stevens, the person who he was photographed with immediately after the sale and who also matched the clothing description." Id.

A review of the trial transcript reflects that Deputy Gene Dixon, the undercover agent, testified that he purchased marijuana from a person riding a bicycle and wearing a white muscle shirt and blue jean shorts. Dixon stated that he gave the man money and, in return, the man gave him three bags of marijuana.[18]

Dixon testified that while the video camera on his vehicle was not working, he got a good look at the person from whom he purchased the marijuana. It was daylight and the perpetrator was leaning into his car.[19] There was no doubt in Dixon's mind that

---

[18]St. Rec. Vol. 2 of 7, pp. 468-73.

[19]Id. at pp. 469 and 473-74.

Johnson was the perpetrator and six days after the event he had no difficulty picking Johnson from a six-person photographic lineup.[20]

Sergeant Corey Wilson, a member of the surveillance team, testified that he was across the street and witnessed the drug transaction.   In court, Wilson had no difficulty identifying Johnson as the perpetrator.[21]  Wilson stayed in the area after the drug buy, never losing sight of the perpetrator.[22]  Wilson was able to provide a description of the perpetrator and direct a patrol officer to the perpetrator's location.[23]

Patrol Sergeant Joseph Ragas testified that he received a description and location of the perpetrator from Sergeant Wilson and within minutes made contact with the perpetrator.[24]  At that point, the perpetrator was with a second individual and had laid down his bicycle.[25]  In court, Ragas positively identified Johnson as the person he stopped and photographed based upon Wilson's description of the drug dealer.[26]

---

[20]St. Rec. Vol. 2 of 7, p. 474; St. Rec. Vol. 3 of 6, p. 475.

[21]St. Rec. Vol. 3 of 6, pp. 543-44.

[22]Id. at p. 544.

[23]Id. at pp. 544-45.

[24]Id. at pp. 518-19.

[25]Id. at p. 519.

[26]Id.

In <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114-16 (1977), the Supreme Court reaffirmed several factors, enunciated in <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972), that should be considered when determining the reliability of identification testimony.  A court should consider:  1) the opportunity of the witness to view the subject; 2) the witness's degree of attention; 3) the accuracy of the description; 4) the witness's level of certainty; 5) the elapsed time between the crime and the identification; and 6) the corrupting influence of a suggestive identification.[27]

Johnson contends that the <u>Manson</u> "test" has not been satisfied and, therefore, his identification was unreliable.  In support of his claim, Johnson points to the following deficiencies in the State's evidence.  1) The primary identification witness, Deputy Dixon, was not familiar with the seller, having never seen him before the drug transaction.[28]  2) The video tape recording device, central to undercover drug purchases, was not functioning.[29]  3)

---

[27]Factor 6) is not at issue in the instant matter.  Johnson makes no claim that the six-person photographic identification process was suggestive.

[28]Rec. Doc. No. 3, p. 21.  While Johnson, at this point in his brief, attacks Dixon's credibility based upon the fact that Dixon did not know him, Jackson also attacks Dixon's credibility based on the fact that Dixon did know him.  According to Johnson, Dixon's testimony that Johnson sold him drugs was not credible because Dixon was, in fact, acquainted with Johnson and, for this reason, Johnson would never have sold him drugs.  Rec. Doc. No. 3, pp. 38, 40.

[29]Rec. Doc. No. 3, pp. 21 and 40.

Deputy Dixon had trouble remembering details, such as the year the drug transaction took place, admitting that it was hard to keep track of all the people he interacted with in connection with his undercover drug transactions.[30] 4) There were discrepancies between the police report and the testimony regarding whether the perpetrator had a bicycle and no evidence was introduced that the perpetrator used a cell phone.[31] 5) Though he was photographed with another black male wearing similar clothing, Dixon testified that he did not pay attention to any other black males.[32] 6) Six days and numerous other drug purchases passed before Dixon identified him from a six-person photographic lineup.[33] 7) The officer who presented the photographic lineup to Dixon did not offer testimony at trial.[34] 8) Sergeant Wilson offered conflicting testimony, stating that the seller approached from the driver's side when he had previously testified that he approached from the passenger side.[35] 9) No bicycle was recovered and no money was recovered.[36] The jury, however, heard the above deficiencies in the State's

---

[30] Id. at pp. 21, 25 and 40.

[31] Id. at pp. 25-26.

[32] Id. at p. 22.

[33] Id. at pp. 22, 25 and 38.

[34] Id. at p. 42.

[35] Id. at pp. 22, 25 and 41.

[36] Id. at pp. 22 and 41.

witnesses' testimony and nevertheless, as evidenced by its verdict, believed the State's witnesses.

That a defendant's conviction may have been based on the credibility of witness testimony is insufficient to supplant the jury's determination of guilt. Green v. Johnson, 160 F.3d 1029, 1047 (5th Cir.1998). Review of the sufficiency of the evidence does not include review of the weight of the evidence or of the credibility of the witnesses. Schlup v. Delo, 513 U.S. 298, 330 (1995) (under Jackson resolving credibility issues is generally beyond the scope of appellate review); United States v. Goff, 155 Fed. Appx. 773 (5th Cir.2005) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir.1993)). Instead, the narrow standard of review under Jackson "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

The Louisiana Fifth Circuit concluded:  "We find that the State negated any reasonable probability of misidentification and proved beyond a reasonable doubt that defendant was guilty of distribution of marijuana." Johnson, 32 So.3d at 255.  This Court finds that the state appellate court's conclusion in this regard does not represent an unreasonable application of federal law to the facts of this case.

**EXCESSIVE SENTENCE (CLAIM 2)**

Johnson argues that the fifteen year sentence he received was unconstitutionally excessive given the small amount (less than 4 grams) of marijuana which he was convicted of selling.  Relying on state law,[37] Johnson asserts that even though his sentence is within statutory limits, it is nevertheless excessive.  Based upon the following, the Court finds the instant claim to be without merit.[38]

To the extent Johnson is arguing that his sentence was excessive under Louisiana law, such claims are not cognizable in this federal proceeding.  Federal habeas corpus relief is available only for violations of federal constitutional law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir.1998); see also Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, *13 (E.D. La. June 16, 2009).

---

[37]Johnson relies solely upon state law in support of the instant claim.

[38]Though the State addresses the merits of Johnson's excessive sentence claim, the State alternatively argues that the claim is procedurally barred because the Louisiana Fifth Circuit determined, pursuant to LSA-C.Cr.P. art 881.2(A)(2), that Johnson was precluded from attacking his sentence because it was imposed pursuant to a plea agreement.  Johnson, 32 So.3d at 255.  Due to the lack of jurisprudence providing that Article 881.2(A)(2) is an adequate procedural bar, along with the fact that there is no merit to the instant claim, the Court shall proceed to address the substance of Johnson's argument.  See Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007), adopted (Engelhardt, J.) (a federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits) (citing Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992)).

16

To the extent Johnson is arguing that his sentence is excessive under the Eighth Amendment of the United States Constitution, that argument has no merit. In <u>Solem v. Helm</u>, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." <u>United States v. Gonzales</u>, 121 F.3d 928, 942 (5th Cir.1997) (citing <u>Rummel v. Estelle</u>, 445 U.S. 263, 274–76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." <u>Gonzales</u>, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." <u>Id</u>. (quotation marks omitted). Federal courts accord broad discretion to a state trial court's sentencing decision that falls within legislative limits. <u>Haynes v. Butler</u>, 825 F.2d 921, 923–24 (5th Cir.1987). If a sentence is within statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991).

17

In this case, not only did Johnson's sentence fall within statutory limits, Johnson's 15-year sentence constituted the <u>minimum</u> sentence provided for under said limits.  Under LSA-R.S. 40:966(B)(3), Johnson's conviction for distribution of marijuana carried a sentence of not less than five years nor more than 30 years.  As a second offender, Johnson faced a sentence of "not less than one-half the longest term," i.e., not less than 15 years, one-half of 30 years.  LSA-R.S. 15:529.1(A)(1).

Johnson has not shown that his sentence was grossly disproportionate or unconstitutionally excessive in light of the crime for which he was convicted.  Johnson received the minimum sentence dictated under legislative guidelines.  Johnson is not entitled to relief on this claim.

## INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM 3)

Johnson argues that he received ineffective assistance of counsel at his habitual offender hearing.  Johnson contends that his counsel was ineffective for failing to request that his 15-year sentence be served concurrently with a 10-year sentence he was serving in another, unrelated criminal conviction.  The State argues that the instant claim is procedurally barred as it constitutes an attack on Johnson's multiple bill sentencing which Johnson raised on post-conviction which is prohibited under state law, specifically La.C.Cr.P. art. 930.3; <u>State ex rel. Melinie v.</u>

State, 665 So.2d 1172 (La. 1996); and, State v. Cotton, 45 So.3d 1030 (La. 2010).[39]

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Maples v. Thomas, 132 S.Ct. 912, 922 (2012); Walker v. Martin, 131 S.Ct. 1120, 1127 (2011); Coleman v. Thompson, 501 U.S. 722, 731–32 (1991); Roberts v. Thaler, 681 F.3d 597, 604 (5th Cir.2012), cert. denied, 133 S.Ct. 529 (2012); Glover v. Cain, 128 F.3d 900, 902 (5th Cir.1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir.1995). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Finley v. Johnson, 243 F.3d 215, 218 (5th Cir.2001); Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris v. Reed, 489 U.S. 255, 263 (1989); Roberts, 681 F.3d at 604; Finley, 243 F.3d at 218; Glover, 128 F.3d at 902.  When the last state court judgment does not

---

[39]Rec. Doc. No. 11, pp. 27-28.

indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.   <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).

A review of the record reflects that the instant claim was raised by Johnson on post-conviction.[40]   The district court dismissed the application on procedural grounds, declining to address the merits.[41]   The district court based its decision on the Louisiana Supreme Court ruling in <u>State v. Cotton</u>, 45 So.3d 1030 (La. 2010), wherein the court, in pertinent part, provided:

> The appellate court's order granting respondent's writ and remanding the case to the district court is vacated and the district court ruling dismissing the application is reinstated.   In <u>State ex rel. Melinie v. State</u>, 93-1380 (La.1/12/96), 665 So.2d 1172, this Court construed the provisions of La.C.Cr.P. art. 930.3 and determined that they "provide[ ] no basis for review of claims of excessiveness or other sentencing error post-conviction." . . . An habitual offender adjudication . . . constitutes sentencing for purposes of <u>Melinie</u> and La.C.Cr.P. art. 930.3, which provides no vehicle for post-conviction consideration of claims arising out of habitual offender proceedings, as opposed to direct appeal of the conviction and sentence.   La.C.Cr.P. art. 912(C)(1)(defendant may appeal from a judgment "which imposes sentence").   <u>A fortiori, respondent's claim that he received ineffective assistance of counsel at his habitual offender adjudication is not cognizable on collateral review so long as the sentence imposed by the court falls within the range of the sentencing statutes.</u> Cf. La.C.Cr.P. art. 882.   [Emphasis added.]

---

[40]St. Rec. Vol. 7 of 7, Application for Post Conviction Relief, pp. 8-10.

[41]St. Rec. Vol. 7 of 7.

The Louisiana Fifth Circuit likewise denied relief on procedural grounds.  The state appellate court stated:

> In his first assignment of error, relator claims he was
> provided ineffective assistance of counsel at
> his multiple bill proceeding.  The Louisiana Supreme Court
> has specifically held that a defendant's claim that he
> "received ineffective assistance of counsel at his
> habitual offender adjudication is not cognizable on
> collateral review so long as the sentence imposed by the
> court falls within the range of the sentencing statutes."
> State v. Cotton, 2009-KP-2397, p. 2 (La. 10/15/2010), 45
> So.3d 1030, 1031.  In application to this Court,
> defendant admits that the trial judge imposed the minimum
> sentence required.  Further, on review of defendant's
> conviction and sentence, this court determined that "the
> sentence imposed was the mandatory minimum allowed by
> law.  See LSA-R.S. 40:966(B)(3) and LSA-R.S.
> 15:529.1(A)(1)(a)." Johnson, 09-611, p. 10 (La. App. 5
> Cir. 1/26/10), 32 So.3d at 255.  Accordingly, relator's
> first assignment of error is not cognizable on review of
> a ruling denying post-conviction relief.

State v. Johnson, No. 2012-KH-0147 (La. App. 5th Cir. 2/13/12); St. Rec. Vol. 7 of 7.[42]

For the foregoing state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Roberts, 681 F.3d at 604; Finley, 243 F.3d at 218; Amos, 61 F.3d at 338.  To be "adequate," the state procedural rule must be

---

[42]The Louisiana Supreme Court denied relief without opinion. Johnson, 98 So.3d 334.

strictly or regularly followed by the state courts and evenhandedly applied to the majority of similar claims.  <u>Roberts</u>, 681 F.3d at 604; <u>Finley</u>, 243 F.3d at 218; <u>Glover</u>, 128 F.3d at 902.

This Court has held that <u>State ex rel. Melinie</u>, <u>Cotton</u> and Article 930.3 provide independent and adequate state grounds for dismissal which bar review by the federal courts in a habeas proceeding.  <u>See</u>, <u>e.g.</u> <u>Holmes v. Cooper</u>, No. 12-1350, 2013 WL 694073 (E.D. La. Jan. 22, 2013), report & recommendation adopted, 2013 WL 695352 (E.D. La. Feb. 26, 2013) (Barbier, J.) (article 930.3 deemed independent and adequate ground to bar challenge to counsel's representation at habitual offender  hearing); <u>Cotton v. Cooper</u>, No. 11-0231, 2011 WL 5025311, at *7 (E.D. La. Sept. 14, 2011), report & recommendation adopted, 2011 WL 5025295 (E.D. La. Oct. 21, 2011) (Africk, J.) (article 930.3 and <u>State ex rel. Melinie</u> are independent and adequate grounds); <u>Richardson v. Cain</u>, 2010 WL 1838642, *11 (E.D.La. Apr. 1, 2010) report & recommendation adopted, 2010 WL 1837924 (E.D.La. May 3, 2010) (Vance, J.) (same); <u>Mead v. Cain</u>, No. 03-3058, 2010 WL 3488187, at *3 (E.D.La. Aug. 26, 2010) (Berrigan, J.), aff'd after certif. of appealability grt'd on other grounds, 438 F. App'x 341 (5th Cir.2011) (article 930.3 is independent and adequate to bar habeas claim that counsel was ineffective in connection with a multiple offender adjudication); <u>Neal v. Kaylo</u>, No. 01-2211, 2001 WL 1195879, at *4-5 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (article 930.3 and <u>State ex rel. Melinie</u>

are independent and adequate); Leonard v. Hubert, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); Marshall v. Hubert, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same).  Based on this authority, the Court finds that the bar imposed under La. Code Crim. P. art. 930.3, Cotton and State ex rel. Melinie is independent and adequate to bar review of the merits of Johnson's claim related to his multiple offender adjudication and representation.

A federal habeas petitioner may be excepted from the procedural default rule only if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, or that the failure to consider his claim would result in a fundamental miscarriage of justice.  Roberts, 681 F.3d at 604 (citing Schlup v. Delo, 513 U.S. 298, 326-27 (1995); Sawyer v. Whitley, 505 U .S. 333, 340 (1992); Williams v. Thaler, 602 F.3d 291, 307 (5th Cir.2010)); accord Finley, 243 F.3d at 220 (citing Coleman, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 485 (1986)).

"Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] ... impeded [his] efforts to comply with the State's procedural rule." Maples, 132 S.Ct. at 922 (citing Coleman, 501 U.S. at 753; Murray, 477 U.S. at 488) (quotation omitted) (emphasis in original); accord Holland v. Anderson, 230 F. App'x.

374, 379 (5th Cir.2007) (citing <u>Bagwell v. Dretke</u>, 372 F.3d 748, 756-57 (5th Cir.2004)).   The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.   <u>Murray</u>, 477 U.S. at 486.

In this case, Johnson claims he could not have raised the instant issue on appeal "[b]ecause this issue did not exist within the Record of Appeal . . . ."[43]   Johnson, however, was aware of his claim at or immediately after his habitual offender hearing. Johnson knew he was serving a 10-year sentence unrelated to the 15-year sentence he received in connection with his marijuana distribution conviction and knew that counsel had not sought to have the two sentences run concurrently.   The Court's review of the record does not support a finding that any factor external to the defense prevented Johnson from raising his claim in a procedurally proper manner.   The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."   <u>Hoque</u>, 131 F.3d 466, 497 (5th Cir.1997) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 134 n. 43 (1982)).   Having

_____

[43]Rec. Doc. No. 3, p. 35.

24

failed to show an external, objective cause for his default, the
Court need not determine whether prejudice existed.  <u>Roberts</u>, 681
F.3d at 608 (citing <u>Coleman</u>, 501 U.S. at 750); <u>Finley</u>, 243 F.3d at
220 n.4; <u>Ratcliff v. Estelle</u>, 597 F.2d 474, 477 (5th Cir.1979)
(citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681–82 (5th Cir.1977)).

　　　Having failed to show the requisite "cause," Johnson may avoid
this procedural bar only if a fundamental miscarriage of justice
will occur if the merits of his claim are not reviewed.  <u>Roberts</u>,
681 F.3d at 604; <u>Hoque</u>, 131 F.3d at 497 (citing <u>Sawyer</u>, 505 U.S. at
339).   To establish a fundamental miscarriage of justice,
petitioner must provide this Court with evidence that would support
a "colorable showing of factual innocence."  <u>Kuhlmann v. Wilson</u>,
477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Murray v.
Quarterman</u>, 243 F. App'x 51, 55 (5th Cir.2007); <u>Bagwell</u>, 372 F.3d
at 757.

　　　The fundamental miscarriage of justice exception "'is limited
to cases where the petitioner can make a persuasive showing that he
is actually innocent of the charges against him.'.... Proving such
a claim is 'daunting indeed,' requiring the petitioner to show, 'as
a factual matter, that he did not commit the crime of conviction.'"
<u>McGowen v. Thaler</u>, 675 F.3d 482, 489 (5th Cir.), <u>cert</u>. <u>denied</u>, 133
S.Ct. 647, 648 (2012) (quoting <u>Finley</u>, 243 F.3d at 220; <u>Fairman v.
Anderson</u>, 188 F.3d 635, 644 (5th Cir.1999)) (internal quotation
omitted).  To satisfy the factual innocence standard, "petitioner

25

'must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence."'" <u>Id</u>. at 500 (quoting <u>Fairman</u>, 188 F.3d 644) (quoting <u>Schlup</u>, 513 U.S. at 327)). Thus, this standard requires an "'extraordinarily high' 'threshold showing.'" <u>Id</u>. at 503 (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 417 (1993)). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. <u>Murray</u>, 243 F. App'x at 55; <u>Bagwell</u>, 372 F.3d at 757; <u>Glover</u>, 128 F.3d at 903.

Johnson has not presented any "new, reliable evidence" to support his claim of actual innocence. Johnson's claim is therefore procedurally barred from habeas review.

<u>**RECOMMENDATION**</u>

For the foregoing reasons, it is **RECOMMENDED** that the petition of Bobby Johnson for issuance of a writ of habeas corpus under 28 U.S.C. §2254 be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en banc</u>).[44]

    New Orleans, Louisiana, this <u>31st</u> day of <u>   October   </u>, 2013.

                        ALMA L. CHASEZ
            UNITED STATES MAGISTRATE JUDGE

---

[44]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.